NEW ORLEANS & NORTHEASTERN RAILROAD COMPANY, et al.
*v.* THORNTON

No. 42735          October 7, 1963          156 So. 2d 598

*Pack & Ratcliff, Warner Beard, Jr.,* Laurel, for appellants.

618

*Melvin, Melvin & Melvin,* Laurel, for appellee.

JONES, J.

This case comes from the Circuit Court of the Second Judicial District of Jones County and is an appeal from a judgment for personal injuries received in a collision between an automobile in which the plaintiff was riding and a truck owned by the railroad company and driven by Thigpen, the other defendant.

The judgment was rendered on a peremptory instruction given to the plaintiff on the question of liability. The giving of this instruction is assigned as error, with which assignment we agree. There are other assignments of error, including one that the verdict is grossly excessive. However, we are not considering any other assignments inasmuch as we deem it necessary to reverse the case for another trial and these questions may not arise on the next proceedings.

The accident occurred in Laurel just east of the railroad track of the Southern Railway, near the underpass of Highway 84, where such highway goes under the railroad track. There are three highways which converge at this point and in the center there is a triangular strip which includes what is referred to as an island.

We do not think it necessary to discuss the various highways. The facts testified by the plaintiff and all of her witnesses were that the plaintiff was riding in an automobile owned by her father-in-law, driven by her mother-in-law, and proceeding toward their home. They had crossed under the underpass above mentioned and were turning in a northerly direction, traveling on the right side of their road. As they approached

what has been referred to as the island, they saw the truck owned by appellant railroad company, driven by appellant Thigpen, approaching about 125 feet north of the island. It was misting rain. The highway was constructed at one point of cement and at another point of what is referred to as "black-top". Plaintiff and her witnesses said that defendant's truck was traveling south at a speed of approximately 40 miles per hour; that it was straddle the center line of the highway; that when it got within approximately 60 or 70 feet of the car in which plaintiff was riding, the driver undertook to jerk it to the right, evidently in an effort to get back in his lane of traffic, whereupon the truck skidded sideways across both lanes of the road until it collided with the car in which plaintiff was riding, which car had pulled as far to the right as it could and was adjacent to the island mentioned. The contention was that the driver of the truck was negligent in driving at an excessive rate of speed under the circumstances; in driving over the center line of the highway; and that what caused the truck to skid was his jerking the steering wheel so as to turn it back to the right; that all of this was negligence and that such negligence resulted in the injuries received by plaintiff which are unnecessary to detail.

The occupants of the car in which plaintiff was riding corroborated her testimony, and there was shown by others, including police officers, that the driver of the truck said it was his fault and that he was going too fast.

The driver of the truck was called as an adverse witness. He denied that he was straddling the center line; denied that he was going 40 miles per hour; denied that he made the various statements of admissions to the officers and others, and undertook to explain the accident by saying that as he was driving south at a speed of about 10 or 15 miles per hour, the car which was in front of him applied its brakes, and that in order

to further slow down his truck, he applied the brakes thereon and when he did so apply the brakes, they grabbed and that the grabbing of the brakes caused his truck to skid, and that this is what caused the accident. There was no evidence that the brakes of the truck were out of order or that the car was in bad repair. The driver also denied making the various statements to the police officers and the other persons regarding the fact that it was his fault.

The proof was in accordance with the pleadings.

Appellee argues strenuously that Thigpen admitted he did not see the car in which plaintiff was riding until after the truck was on top of the car. As we read his testimony, it was that he saw the cars coming (the Thornton car was not the only car approaching him) but paid no particular attention to that individual car until after the accident. He did not admit he did not see it coming, but on the contrary, testified he did and that he was endeavoring to avoid striking it, and to get the skidding truck straightened out and into its proper lane.

The rule relative to skidding is stated in 8 Am. Jur. 2d 239, from which we quote:

"The mere fact that a motor vehicle skide is not, in itself, evidence of the driver's negligence; rather, the question of negligence in that respect depends on all the pertinent circumstances. Nor is the mere fact of skidding sufficient in itself to make applicable the doctrine of res ipsa loquitur, since skidding is not so uncommon or unusual that unless explained, it furnishes evidence of the motorist's negligence. Under the particular circumstances of a case it may be held that a motorist who skidded could not be regarded as negligent, the skidding being viewed as unavoidable, so that the motorist had a valid excuse for his departure from his regular course. Nevertheless, skidding may constitute negligence or evidence of negligence where it appears

that it was caused by a failure to take reasonable precaution to avoid it when the conditions at the time made such a result probable in the absence of such precaution. In other words, even though the skidding of a motor vehicle, considered by itself as an isolated factor unrelated to surrounding circumstances, is not evidence of negligence, this does not mean that skidding always constitutes a defense to other proved acts of negligence. Where the evidence is conflicting and different inferences of fact may be drawn therefrom, whether a motorist was negligent in skidding generally presents a question for the jury.''

In passing upon a motion for a peremptory instruction, this Court, in Buntyn v. Robinson, 233 Miss. 360, 102 So. 2d 126, said:

''The rule to be applied in determining whether a party is entitled to a directed verdict has been stated in many of our cases. The Court must look solely to the testimony in behalf of the party against whom the directed verdict is requested, and, taking that testimony as true, along with all reasonable inferences which could be drawn therefrom favorable to said party, if it could support a verdict for him, the directed verdict should not be given. We state the facts with this rule in mind, which is to say, that the evidence favorable to appellee will not be stated. We do not decide whether the evidence is overwhelming in favor of appellee. That question is not before us. Even where the evidence is such that a judgment for the adverse party would have to be set aside as being contrary to the overwhelming weight of the evidence, it does not necessarily follow that a party is entitled to a directed verdict. Yazoo & M.V.R.R. Co. v. Pittman, 169 Miss. 667, 153 So. 382; Fore v. A. & V. Railway Co., 87 Miss. 211, 39 So. 493.'' See also Williamson v. Inzer, 239 Miss. 707, 125 So. 2d 77; Jester v. Bailey, 239 Miss. 384, 123 So. 2d 442.

Applying these rules, we think a jury issue was presented.

Reversed and remanded.

*Lee, P. J., and McElroy, Rodgers and Brady, JJ.,* concur.