368 So.2d 238 (1979)
Mrs. Tellas Mae PITTMAN et al.
v.
MISSISSIPPI POWER AND LIGHT COMPANY.
No. 50861.
Supreme Court of Mississippi.
March 7, 1979.
Bailey & Trusty, Thomas W. Belleperche, Batesville, for appellants.
Wise, Carter, Child, Steen & Caraway, Natie P. Caraway, Jackson, for appellee.
*239 Before ROBERTSON, WALKER and LEE, JJ.
WALKER, Justice, for the Court.
The wife and children of Alfred Pittman, deceased, filed this wrongful death suit against Mississippi Power and Light Company in the Circuit Court of DeSoto County. After trial, the jury returned a verdict for the Power Company.
Plaintiffs' deceased, Alfred Pittman, was killed by the fall of a utility pole while bushhogging the adjacent area on a tractor. The evidence indicated that the tractor or bushhog came into contact with a guy wire to the pole and as a result, the pole broke at its base falling on and killing Pittman.
Plaintiffs attempted to show negligence on two theories. The first was that the pole was improperly maintained, e.g., that it was rotten. The second theory was that the pole failed to meet standards established by the National Electric Safety Code.
Appellants argue that it was error for the court to admit into evidence a motion picture demonstration offered by defendant.
During the course of the trial, defendants offered into evidence a motion picture film of a tractor applying force to the guy wire of a pole and breaking the pole. The motion picture was made as part of a continuing study by Dr. Thompson, expert witness for the defendants, on light poles and stress.
Dr. Thompson stated it was an attempt to simulate the accident, but admitted some factors were different. The appellants argue these differences.

 ACCIDENT SCENE APPELLEE'S MOTION PICTURE
 1. 20 year old pole New pole
 2. 30-20 John Deere Tractor Ford Tractor
 3. High weeds around pole and No weeds in picture
 guy wire
 4. Two guy wires One guy wire
 5. Gear of tractor unknown Guessed at gear of tractor
 6. Speed of tractor unknown Guessed at speed of tractor
 7. Tractor headed counter clockwise Tractor pulled away from pole
 around pole
 8. Pole broke at base Pole broke 4 feet from base
 9. Nothing at base of pole Paraphernalia at base of pole

The Power Company, on the other hand, argues on appeal that the purpose of the test was not to recreate the accident exactly, but rather to try to simulate the size of the pole, the load on the pole, and the size of the tractor in order to determine if a new pole could withstand the stress which would have been generated at the accident scene.
They point out that the value of the test is to show that if a new pole could not withstand a similar stress, that fact becomes relevant to show that the break would have occurred no matter how good the condition of the pole. Other testimony showed that while the same model tractor was not used, the substitute was closely matched as to horsepower, size and pulling power. Other testimony by the expert, Dr. Thompson, was to the effect that neither the steel cuff and rubber shim at the base of the pole nor any other of the alleged variances would have any effect on the stress at which a pole would break.
The trial judge, after viewing the motion picture outside the presence of the jury, overruled the objection holding that the objections went to the weight of the evidence rather than to its admissibility. We disagree.
It is true that in Mississippi motion pictures are admissible into evidence. Barham v. Nowell, 243 Miss. 441, 138 So.2d 493 *240 (1962); Metropolitan Life Ins. Co. v. Wright, 190 Miss. 53, 199 So. 289 (1940).
In Metropolitan Life Insurance Company, supra, this Court held, "Evidence by means of motion pictures exhibited to a trial jury, while novel, is admissible when the accuracy with which they will reproduce the scenes photographed is proven,  somewhat like the accuracy of an ordinary photograph is proven. 3 Wig.Ev. 3rd Ed., Sec. 798a." (190 Miss. at 63, 199 So.2d at 291). Again, in Barham, supra, we pointed out that a photographic representation of a scene is less likely to be distorted than a verbal one. (138 So.2d at 496 [citing to 8 Am.Jur., Proof of Fact, p. 155]).
However, the Court has been careful to limit admissibility of motion pictures unless a proper foundation has been laid for their introduction.
In Barham, supra, we stated:
As pointed out in 8 Am.Jur., Proof of Facts, page 157, it is essential in all cases to prove relevancy of the subject matter to the issues, identity of the subject matter, and that the moving pictures present an accurate and faithful representation of the scenes filmed. (138 So.2d at 495). (Emphasis added).
In Butler v. Chrestman, 264 So.2d 812 (Miss. 1972), we held that even if properly authenticated a motion picture must be excluded if it is "more likely to ... prejudice the jury rather than to serve any evidentiary purpose." (264 So.2d at 816).
We have held that in order to introduce a motion picture, the burden is on the proponent to lay a proper foundation for its introduction. In the present case, there is no contention that the motion picture was not properly authenticated, e.g., technical questions of who made it, how, and under what conditions the film was made, were satisfactorily answered. However, its relevancy was challenged by the plaintiffs because of the dissimilar circumstances heretofore enumerated, between the actual accident and that shown by the motion picture.
On the other hand, Mississippi Power and Light contends the motion picture was relevant because it demonstrates that even a new pole in good condition could not withstand the pressure generated at the time of the accident. From this, they argue that plaintiffs' contention that a faulty pole was the cause of the accident is refuted. We do not agree because the evidence, without dispute, shows that there were a number of material variations between the actual event and the reconstructed event. Indeed, some factors were incapable of being reasonably duplicated because they were unknown, e.g., the speed of the tractor at the time of the accident, the point and manner of impact and the gear level. These disparities become even more important in view of the testimony of the Power Company's expert witness who testified before the jury that "This was an attempt to recreate the accident," or words to that effect. When this testimony is coupled with the dissimilar circumstances between the actual accident and those depicted by the motion picture, we are of the opinion the motion picture was more likely to mislead and prejudice the jury, rather than to serve any evidentiary purpose. Under the circumstances presented by the evidence, the motion picture was not relevant to the inquiry before the court as to whether the pole which struck the decedent was sound and properly maintained. Its introduction into evidence, therefore, was error. Furthermore, we are unable to say, as urged by appellee, that its introduction constituted harmless error.
For the foregoing reasons, the judgment of the lower court is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE and BOWLING, JJ., concur.
COFER, J., took no part.